FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

RECEIVED
JUL 11 2014
Clerk of the Circuit Court
Montgomery County, Md.

| | |
|---|---|
| THE RECREATION AND WELFARE ASSOCIATION OF THE NATIONAL INSTITUTES OF HEALTH<br>9000 Rockville Pike, Building 31A, B1W30<br>Bethesda, MD 20892<br><br>    *Plaintiff,*<br><br>    v.<br><br>CREATIVE INTERNET MARKETING, INC.<br>3012 Gold Mine Road<br>Brookeville, MD 20833<br><br>Serve on Resident Agent:<br>Ruth Sragner<br>3012 Gold Mine Road<br>Brookeville, MD 20833<br><br>    *Defendant,*<br><br>and<br><br>RUTH SRAGNER<br>3012 Gold Mine Road<br>Brookeville, MD 20833<br><br>    *Defendant.* | Case No. _____ |

392771V

## COMPLAINT

    Plaintiff, The Recreation and Welfare Association of the National Institutes of Health, sues Defendants, Creative Internet Marketing, Inc. ("CIM"), a Maryland corporation, and Ruth Sragner ("Sragner"), an individual (together, the "Defendants"), for misappropriation of cash and other valuable property, misrepresentation, tortious interference with contractual relations, fraud and unfair competition as set forth below:

1

<u>Parties</u>

1.      Plaintiff, The Recreation and Welfare Association of the National Institutes of Health (the "Association"), is a Maryland non-profit, non-stock corporation that was established in 1953.   The Association is a government employee services organization and provides affordable services and programs, focused on enhancing the health and well-being of its members, which include (i) the staff, patients, patients' families, contractors and other members of the National Institutes of Health ("NIH") community, (ii) the staff and other members of the National Oceanic and Atmospheric Administration community, and (iii) the staff and other members of the United States Department of Health and Human Services community (collectively, the "Government Communities").

2.      The Association is exempt from income tax under Section 501(c)(4) of the Internal Revenue Code as a non-profit organization, organized exclusively for the promotion of social welfare.

3.      In addition to the services and programs that the Association provides to the Government Communities, the Association is dedicated to raising money to support three specific charitable organizations associated with NIH:  (i) **the Children's Inn at the National Institutes of Health**, which provides a residence for seriously ill children and their families while undergoing treatment at NIH; (ii) **Special Love/Camp Fantastic**, which provides financial and other support to children receiving treatment at NIH; and (iii) **Friends of the Clinical Center**, which provides financial assistance for patients participating in research protocols at NIH.  All profits generated by the Association from its various business activities are donated to these three charities.

2

4.     Defendant, CIM, is a Maryland for-profit corporation and provides marketing services directed at United States Government employees.

5.     CIM was incorporated on October 13, 2010.

6.     CIM does business under a trade name, "GOVEMPLOYEE.COM," which was registered to CIM in the records of the Maryland State Department of Assessments and Taxation on June 14, 2013.

7.     Defendant, Sragner, is on information and belief a stockholder and officer of CIM and manages the day-to-day operations of CIM.

### Jurisdiction and Venue

8.     This Court has jurisdiction over the parties in this litigation pursuant to § 6-102 and § 6-103 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland (2006) ("CJP").

9.     Venue is proper in this jurisdiction pursuant to CJP § 6-201.

### Background

10.    On February 15, 1996, the Association registered the internet domain name, "www.recgov.org" (the "Website"), in the name of the Association.

11.    Sragner was an employee of the Association from 1990 until February 1998.  As an employee of the Association, Sragner's duties included marketing and sales, and, once the Website was created, administering and selling advertising on the Website.

12.    The Association developed the Website in conjunction with a business model that the Association developed prior to the creation of the Website.  Visitors to the Website are presented with links to various advertisers, and these advertisers offer discounts to the visitors (predominantly members of the Government Communities) for the advertisers' products and

services, and in return, the Association receives (i) advertising revenue and (ii) commissions on the advertisers' products and services sold through the Website (collectively, the "Business").

13.     Further, other employee recreation associations affiliated with certain United States Government agencies and facilities formed partnerships with the Association so that their employees and community members could use the Website and enjoy the benefits that the Association provided to the Government Communities.  The other government employee recreation associations linked their individual websites to the Website, so that the Website became a well-known, central hub for United States Government employees and recreation associations.

14.     By 2013, the Association was offering its Website based products and services to the following US Government organizations:  (i) Andrews Air Force Base, (ii) Department of Agriculture, (iii) Bolling Air Force Base, (iv) Center for Disease Control, (v) Commodity Futures Trading Commission, (vi) Defense Intelligence Agency, (vii) Defense Logistics Agency, (viii) Naval Support Facility-Dahlgren, (ix) Energy Department Employee Association, (x) Food and Drug Administration Recreation Association, (xi) FBI Recreation Association, (xii) Federal Communications Commission Recreation Association, (xiii) Ft. Belvoir Recreation Services, (xiv) Ft. Detrick, (xv) Ft. McNair, (xvi) Ft. Meade, (xvii) Ft. Myers, (xviii) Government Accounting Office, (xix) GSA Recreation Association, (xx) HQ Army Recreation Services-Pentagon, (xxi) Naval Support Facility-Indian Head, (xxii) Department of the Interior, (xxiii) Department of Labor, (xxiv) HQ, United States Marine Corp., (xxv) National Archives, (xxvi) National Institute of Science and Technology, (xxvii) National Naval Medical Center, (xxviii) National Security Agency, (xxix) National Science Foundation, (xxx) Patuxent River Naval Base, (xxxi) Social Security Administration and CMS, (xxxii) Department of State, (xxxiii)

1770783.2                                                                                               88158.001

Department of Transportation, (xxxiv) Treasury Department, (xxxv) Transportation Security Administration, (xxxvi) Veterans Administration, (xxxvii) Ft. McCoy, (xxxviii) Dugway Proving Grounds, (xxxix) HDI Federal Center, and (xl) United States Navy-Mid-Atlantic Region, Norfolk, Annapolis, Washington, etc.

15.     In addition to being a vehicle for providing valuable products and services to the Government Communities and other United States Government employee recreation associations, the Website became an important source of funding for the Association's activities and its support for the NIH charities.

16.     For its fiscal year ending June 30, 2013, the Association generated $265,255.00 in revenues from the Website.

17.     On or around October 30, 1996, Sragner formed her own company, Creative Internet Applications, Inc. ("Applications"), but she remained employed with the Association until February, 1998.

18.     Until Sragner's termination of her employment with the Association, all work she performed relating to the Website and the Business was as an employee of the Association.

19.     As an employee of the Association, Sragner first learned about the Business and the Association's valuable trade secrets associated with the Business.

20.     Following Sragner's termination of her employment with the Association, on February 19, 1998, the Association and Applications entered into an agreement (the "Applications Agreement") whereby Applications would provide the Association with marketing and sales services, administrative support, training, and other services relating to the Website.

21.     The Applications Agreement was for an initial term running from December 15, 1997 until December 15, 1998. Thereafter, the Applications Agreement provided that the parties

would meet annually to review the Applications Agreement, beginning at least 30 days prior to the expiration of the existing term, and in the absence of such a meeting, the Applications Agreement would renew for an additional twelve month term. No other written agreement was made by and between Applications and the Association or between the Association and either Sragner or CIM.

22.    According to the terms of the Applications Agreement, Applications was to receive 50% of the first $100,000 of the Association's net revenue generated from the Website, and then 20% of the Association's net revenue generated from the Website in excess of $100,000.

23.    On October 7, 2005, Application's corporate charter was forfeited, and Sragner individually continued to perform Application's duties under the Applications Agreement and receive from the Association a share of the net revenue generated from the Website, pursuant to the terms of the Applications Agreement. After CIM was incorporated on October 13, 2010, CIM continued to perform the same duties outlined in the Applications Agreement, although the parties made a verbal modification whereby CIM received 55% of the net revenue generated through the Website, and the Association received 45%.

24.    Sragner was a trusted employee and then a trusted contractor for the Association, and the Association granted Sragner authority to manage the Website on the Association's behalf. The Association relied on Sragner's honesty and fair dealing in performing her duties on behalf of the Association.

25.    In September, 2012, Sragner approached Randy Schools, the Association's longtime president, and demanded that the Association enter into a new 10 year agreement with CIM for the services that she and CIM had been providing to the Association. Sragner informed

Mr. Schools that she worried about her continuing relationship with the Association after his eventual retirement.

26.     Sragner's proposal for a new long-terms contract was sent to the Association's Board of Directors for review, but the proposal was rejected.

27.     Beginning in January, 2013, the Association began receiving complaints from its Advisory Council that the Website and Sragner's performance of her duties with respect to the Website were unsatisfactory.  In particular, Sragner was unable to make the Website compliant with Section 508 of the Rehabilitation Act of 1973 (29 U.S.C. § 749d), requiring government agencies to make their electronic and information technologies accessible to people with disabilities.  The Website should have been in compliance, since many government agencies linked their websites to the Website.  In February, 2013, a Website Committee of the Association was formed and met to discuss the possibility of creating an entirely new design for the Website.

28.     On March 5, 2013, Sragner met with Mr. Schools and other members of the Association's Board of Directors to discuss whether the Association would enter into a new agreement with CIM.  Sragner became hostile to the other attendees at the meeting, and the meeting ended with Sragner making verbal attacks on Mr. Schools.

29.     On April 9, 2013, the Association met with a website design company to discuss an agreement for a new website design and an arrangement whereby the new company could also sell advertising on the Website.

30.     No agreement was reached with another website design company, but Sragner immediately took steps to try to prevent the Association from continuing its Business without her, and in May, 2013, Sragner, through counsel, claimed that (i) all of the Website's content and

7

(ii) the Association's business model belonged exclusively to her, which claims the Association vigorously disputed then and continues to dispute.

31.     The Website's content, other than links to the advertisers that Sragner solicited on behalf of the Association, was provided or developed by the Association and its employees and volunteers, without assistance or any input from Sragner.

### Sragner and CIM Misappropriate the Website and the Association's Business

32.     On or around August 14, 2013, Sragner without authorization from the Association, surreptitiously and with an intent to defraud the Association, transferred the registration of the Website to CIM.

33.     On or around August 15, 2013, Sragner and CIM unilaterally terminated the Applications Agreement.

34.     Further, Sragner and CIM misappropriated advertising monies forwarded by advertisers to the Association and kept those monies for their own account.

35.     Sragner and CIM began selling advertising on the Website (now registered in the name of CIM) to the same advertisers that had been doing business with the Association, and retained all of said advertising revenue for their own account.

36.     Sragner and CIM misrepresented to the advertisers, the Government Communities and the other United States Government employee recreation associations that the Website was still being operated by and for the benefit of the Association and the Government Communities.

37.     Sragner and CIM misrepresented to the advertisers, the Government Communities, and other United States Government employee recreation associations that advertising revenues and revenues from the sale of products and services through the Website were being received by the Association.

1770783.2                                                                                              88158.001

38.     Sragner and CIM unfairly competed with the Association's Business by misappropriating the Website and misleading the public into believing that the products and services provided by Sragner and CIM were the products and services of the Association.

39.     Sragner and CIM entered into agreements with advertisers for their advertising on the Website, and never disclosed that the Website was being operated on a for-profit basis by Sragner and CIM, as opposed to being operated by a non-profit organization.

40.     Sragner and CIM unfairly competed with the Association by using the Association's trademark on its correspondence to advertisers.

41.     Sragner and CIM further misled the public by failing to disclose that purchases made through the Website were no longer benefiting the Association and the charities that it supported.

42.     Following Sragner and CIM's misappropriation of the Website and the Association's advertising revenues, the Association determined to create a new website, www.fedesp.com (the "New Website"), in order to continue the Association's Business and recapture its former revenue stream.

43.     Sragner and CIM, through their fraud and deceptions, were very successful in obtaining contracts for their own account with the Website's advertisers, and the Government Communities and other US Government employees were accustomed to visiting the Website. Consequently, marketing the New Website, once it was operational, and recapturing the Association's former patrons has been a slow process.

44.     The Association's damages continue to accrue, since the Association has not been able to recover, through the New Website, the volume of daily visitors and advertising that the Website received, prior to its misappropriation by Sragner and CIM.

9

45.     Further, the Website's advertisers have been reluctant to shift their advertising away from Sragner and CIM to the New Website for economic reasons, since the Website's daily visitor traffic remains much higher than the Association's New Website.

46.     When Sragner and CIM misappropriated the Business and the Website, they misappropriated much of the goodwill the Association had developed over many years.

47.     When Sragner and CIM misappropriated the Business and the Website, they misappropriated all of the investments that the Association made in the Website since its creation 17 years previously.

48.     When Sragner and CIM misappropriated the Business and the Website, they committed Mail Fraud and Wire Fraud under 18 U.S.C. § 1341 and 18 U.S.C § 1343 respectively.

49.     When Sragner and CIM misappropriated the Website, they also registered the domain name, "www.recgov.com" (the "Alternative Web Address") in violation of 15 U.S.C. § 1125(d), the Anticybersquatting Consumer Protection Act.

### Count 1

*Misappropriation of Cash—Wrongful Taking*

50.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1-49.

51.     Sragner and CIM misappropriated advertisers' checks made payable to the Association and deposited them into bank accounts held by Sragner and CIM.

52.     The Association was damaged by its loss of the monies paid by advertisers to and for the benefit of the Association.

**WHEREFORE**, Plaintiffs demand that this Court:

A.    Grant a judgment in favor of Plaintiff against the Defendants in the amount of $100,000.00, exclusive of costs.

B.    Grant such additional legal and equitable relief as the nature of the case may require.

## Count 2

### *Breach of Contract*

53.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1-52.

54.    When Sragner and CIM unilaterally terminated the Applications Agreement prior to its expiration date in December, 2013, the Defendants breached the Applications Agreement.

55.    When Sragner and CIM breached the Applications Agreement, the Association suffered damages as a direct result of said breach including loss of profits and damage to the Association's goodwill, all of which damages were foreseeable and intended by Sragner and CIM.

**WHEREFORE,** Plaintiff demands that this Court:

A.    Grant a judgment in favor of Plaintiffs against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.    Grant such additional legal and equitable relief as the nature of the case may require.

## Count 3

### *Unjust Enrichment*

56.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1-55.

57.    When Sragner and CIM misappropriated the Website and the Business, they were unjustly enriched by the value of the Website and the Business, including the goodwill of the Business, which the Association had created through years of investment in time and money.

58.    Sragner and CIM were unjustly enriched by the value of the Website's content that had been developed by the Association or contributed as gifts from the Government Communities.

59.    The benefits conferred on Sragner and CIM by their misappropriation of assets belonging to the Association were substantial.

60.    All of the profits made by Sragner and CIM since their misappropriation of the assets of the Association are derived directly from those assets which rightfully belong to the Association.

61.    Sragner and CIM were aware of and had knowledge of the benefits conferred upon them by their misappropriation of the Association's assets.

62.    Sragner and CIM's use and retention of the Association's assets for no consideration is inequitable.

63.    It would be inequitable for Sragner and CIM to retain ownership of the Association's assets, including the Website and the Alternative Web Address, misappropriated from the Association.

64.    It would be inequitable for the owners of the capital stock of CIM to retain said capital stock.

**WHEREFORE,** Plaintiff demands that this Court:

A.    Grant a judgment in favor of Plaintiff against the Defendants in the amount of $2,000,000.00, exclusive of costs.

1770783.2                                                                                                          88158.001

B.     Charge upon Defendants a constructive trust of the capital stock and the assets of CIM including without limitation the Website and the Alternative Web Address.

C.     Order Defendants as constructive trustees to convey all of their right, title, and interest in CIM and its assets including without limitation the Website and the Alternative Web Address to the Association, free from all liens, mortgages, encumbrances and claims of any nature.

D.     Grant such additional legal and equitable relief as the nature of the case may require.

### Count 4

### *Conversion—Wrongful Taking*

65.     The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-64.

66.     Sragner and CIM unlawfully seized the accounts receivable of the Association by directing advertisers to pay the Defendants for advertising sold on behalf of the Association and misappropriating payments intended for the benefit of the Association.

67.     The Association was damaged in an amount equal to all of the receivables taken by Sragner and CIM.

**WHEREFORE**, Plaintiffs demand that this Court:

A.     Grant a judgment in favor of Plaintiffs against the Defendants in the amount of $200,000.00, exclusive of costs.

B.     Grant such additional legal and equitable relief as the nature of the case may require.

13

Count 5

*Unfair Competition—Trademark Infringement*

68.     The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-67.

69.     Sragner and CIM initially included the Association's trademark on their correspondence directed to the Website's advertisers, in order to mislead the advertisers into believing the Website remained associated with the Association, and Sragner and CIM thereby infringed the Association's common law trademark.

70.     The Association was damaged by Sragner and CIM's misappropriation of their trademark.

**WHEREFORE,** Plaintiffs demand that this Court:

A.      Forever enjoin the Defendants from using the Association's trademark, "R & W"; and

B.      Order Defendants to fully and completely account for all sums earned by Defendants deriving from advertisers who were solicited in conjunction with the Association's trademark;

C.      Enter judgment against Defendants in the amount of $1,000,000.00 for the sums earned by Defendants deriving from said advertisers;

D.      Grant such additional legal and equitable relief as the nature of the case may require.

1770783.2                                                                                                88158.001

Count 6

*Misappropriation of Website and Business*

71.     The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-70.

72.     When Sragner and CIM misappropriated the Website, the Association was damaged by its loss of investment in the Website, the Business, and the goodwill associated with the Website and the Business.

73.     The Association was damaged further by its loss of profits generated from the Website.

74.     Sragner and CIM intended to damage the Association by preventing it from continuing its Business.

**WHEREFORE**, Plaintiffs demand that this Court:

A.     Grant a judgment in favor of Plaintiff against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.     Charge upon Defendants a constructive trust of the capital stock and the assets of CIM including without limitation the Website and the Alternative Web Address.

C.     Order Defendants as constructive trustees to convey all of their right, title, and interest in CIM and its assets including without limitation the Website and the Alternative Web Address to the Association, free from all liens, mortgages, encumbrances and claims of any nature.

D.     Grant such additional legal and equitable relief as the nature of the case may require.

### Count 7

*Unfair Competition—Misappropriation of Products and Services and Misrepresentation*

75.     The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-74.

76.     Sragner and CIM intended to deceive the Government Communities and the members of the other United States Government employee associations that the Association continued to operate the Website and the Business after Sragner and CIM misappropriated the Website and the Business.

77.     Sragner and CIM intended to deceive the Government Communities and the members of the other United States Government employee associations into believing that the products and services offered on the Website were the products and services of the Association.

78.     Sragner and CIM intended to create confusion in the marketplace regarding ownership of the Business and the Website.

79.     Sragner and CIM intended to commit fraud by deceiving the Government Communities and the members of the other United States Government employee associations into believing that their continued use of the Website was benefiting the Association and the charities that the Association supports.

80.     Sragner and CIM intended to commit fraud by deceiving the Website's advertisers into believing that they were advertising on a website owned and operated by the Association.

81.     The Association was damaged by Sragner and CIM's misappropriation of the Association's products and services and misrepresentations in an amount equal to the

1770783.2                                                                 88158.001

Association's investment in the Website and the Business, the Association's lost goodwill and the Association's lost profits.

**WHEREFORE,** Plaintiffs demand that this Court:

A.      Grant a judgment in favor of Plaintiff against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.      Charge upon Defendants a constructive trust of the capital stock and the assets of CIM including without limitation the Website and the Alternative Web Address.

C.      Order Defendants as constructive trustees to convey all of their right, title, and interest in CIM and its assets including without limitation the Website and the Alternative Web Address to the Association, free from all liens, mortgages, encumbrances and claims of any nature.

D.      Grant such additional legal and equitable relief as the nature of the case may require.

**Count 8**

*Violation of the Anticybersquatting Consumer Protection Act*

82.      The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-81.

83.      "recgov" is an unregistered trademark that belongs to the Association.

84.      Visitors to the Defendants' website, www.recgov.com, are directed immediately to the Website, which is the lawful property of the Association.

85.      Sragner and CIM have a bad faith intent to profit from the Association's trademark.

86.    The Alternative Web Address is confusingly similar to the Association's trademark.

87.    Sragner and CIM registered the Alternative Web Address in order to further confuse the public and divert the public away from the Association to Sragner and CIM instead.

**WHEREFORE**, Plaintiffs demand that this Court:

A.    Grant a judgment in favor of Plaintiff against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.    Order Defendants to convey all of their right, title, and interest in the Alternative Web Address to the Association, free from all liens, mortgages, encumbrances and claims of any nature.

D.    Grant such additional legal and equitable relief as the nature of the case may require.

### Count 9

*Tortious Interference With Contractual Relations*

88.    The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-87.

89.    Sragner and CIM induced advertisers to terminate their relationships with the Association and buy advertising on the Website directly through CIM.

90.    Sragner and CIM induced other United States Government employee associations to terminate their relationships with the Association and link their websites to the Website as controlled by Sragner and CIM.

91.    The Association was damaged by Sragner and CIM's intentional interference with its contractual relations.

18

92.     Sragner and CIM were aware of the existing contracts that the Association held with advertisers and other United States Government employee associations.

93.     Sragner and CIM intended to misappropriate the Website and the Business in order to induce the advertisers and the other United States Government employee associations to terminate their relationships with the Association.

94.     The advertisers and the other United States Government employee associations terminated their relationships with the Association because the Association no longer had control of the Website.

95.     The Association was damaged in an amount equal to its lost profits and lost goodwill.

WHEREFORE, Plaintiffs demand that this Court:

A.     Grant a judgment in favor of Plaintiff and against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.     Grant such additional legal and equitable relief as the nature of the case may require.

## Count 10

### *Fraud*

96.     The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-95.

97.     Sragner and CIM committed fraud when they secretly transferred the registration of the Website to themselves and intentionally mislead the Government Communities, other United States Government employee associations, and advertisers into believing that the Website remained under the control of the Association.

1770783.2

88158.001

98.     Sragner and CIM owed the Association a duty of good faith and fair dealing and committed fraud when they transferred the Website to themselves by means of the authority the Association had granted Sragner as its agent for managing the Website.  Sragner and CIM had no authority to transfer the registration of the Website.

99.     Sragner and CIM committed Mail Fraud and Wire Fraud under 18 U.S.C. § 1341 and 18 U.S.C § 1343 respectively when they misled the Government Communities and other United States Government employee associations into believing that the Website remained under the control of the Association and monies spent through the Website were benefiting the Association and the charities that it supported.

100.    Sragner and CIM committed Mail Fraud and Wire Fraud under 18 U.S.C. § 1341 and 18 U.S.C § 1343 respectively when they misled advertisers into believing that the Website remained under the control of the Association.

101.    Sragner and CIM committed Mail Fraud and Wire Fraud under 18 U.S.C. § 1341 and 18 U.S.C § 1343 respectively when they diverted advertising revenues intended for the Association to themselves.

102.    It would be inequitable for Sragner and CIM to retain the Website and the Business and the profits they derived from each.

    **WHEREFORE,** Plaintiffs demand that this Court:

B.     Charge upon Defendants a constructive trust of the capital stock and the assets of CIM including without limitation the Website and the Alternative Web Address.

C.     Order Defendants as constructive trustees to convey all of their right, title, and interest in CIM and its assets including without limitation the Website and the Alternative Web Address to the Association, free from all liens, mortgages, encumbrances and claims of any

20

nature.

      D.     Grant such additional legal and equitable relief as the nature of the case may require.

**Count 11**

*Breach of Duty of Good Faith and Loyalty as Agent—Confidential Relationship*

      103.   The Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-102.

      104.   As the agents of the Association, Sragner and CIM owed the Association a duty of loyalty, fair dealing, and good faith.  Sragner and CIM held a confidential and/or fiduciary relationship with the Association.

      105.   As agents of the Association, Sragner and CIM breached their duties of good faith and loyalty when they transferred the Website and the Business to themselves for their own profit.

      106.   As the agents of the Association, Sragner and CIM owed the Association a duty not to act adversely to the interests of the Association, and Sragner and CIM acted adversely to the interests of the Association when the misappropriated the Website and the Business.

      107.   Sragner and CIM breached their duties to the Association with malice and an intent to do harm to the Association.

      108.   The Association has been damaged by Sragner and CIM's breach of their agreement with the Association, as agents of the Association, to manage the Website in the best interests of the Association.

      109.   The Association has been damaged by Sragner and CIM's breach of their duty of loyalty and fair dealing in an amount equal to the value of the Business, the lost goodwill of the

21

Business, the Association's investment in the Website and the Business, and the Association's lost profits.

**WHEREFORE**, Plaintiffs demand that this Court:

A.      Grant a judgment in favor of Plaintiff against the Defendants in the amount of $2,000,000.00, exclusive of costs.

B.      Grant such additional legal and equitable relief as the nature of the case may require.

Respectfully submitted,

LERCH, EARLY & BREWER, CHARTERED

Theodore R. Goldstock
3 Bethesda Metro Center
Suite 460
Bethesda, MD  20814
(301) 347-1274 (Telephone)
(301) 347-3744 (Facsimile)
*Counsel for Plaintiff, The Recreation and Welfare Association of the National Institutes of Health*

1770783.2                                                                                          88158.001